Porter, J.
Several questions of considerable importance have been raised on the argument of this cause. The first is, whether the act of 1817, regulating the manner in which voluntary surrenders should be made, governs those which are forced ?
The appellants insist that it does, and rely on the authority of Febrero, 2, lib. 3, cap. 3, sec. 1, n. 40, who states that the same rules are observed in both concursos, in every thing which concerns the substance of the judg *691 ment, the validity and preference of the claims of creditors, their classification, their payment, the inventory or sequestration, and the administration of the estate. The question then is, does there exist so close and intimate a connection between the two remedies, that every alteration in the one necessarily extends to, and embraces the other.
East'n District.
Feb. 1822.
In cases of forced surrender all the creditors are at once plaintiffs and defendants.
When the amount due to a creditor is disputed, the party opposing it has a right to demand a jury for the trial of the facts at issue.
An endorser, who has not paid his endorsee, cannot be permitted to vote at the deliberation of the creditors for syndics.
The oath of an agent whose knowlege of the amount due his principal, is derivative, is not legal evidence of the debt.
The counsel seem to have argued this cause as it there was a general provision in the Spanish law, that the rules on certain points, in the two modes of surrender, were not only the same, but should in future be so. Nothing that, kind has been shewn to us. All we can learn is, that at one time there were several rules common to both. But it does not follow, as a necessary consequence, they should always remain so.
The act of 1817, provides, for “voluntary surrenders, and not tor “forced.” On what grounds then can we decide, that it includes the latter remedy? No other have been urged, except that it has been shewn that at one time the practice in each concurso was alike, and that it is a reasonable inference, that any improvement made in the one should extend to the other. Were we to adopt this construc *692 tion, it would be disregarding the letter of the law, under the pretext of pursuing its spirit further than it has ever been done before—it would be enacting by analogy, and repealing by it.
I think therefore the provisions of this statute are not applicable to a case such as this, where the surrender has been compelled at the instance of the creditors. If inconvenience attends this decision, the remedy must be sought from that branch of the government in which the constitution has vested the power of making laws.
The want of precise and positive regulations, in the ancient law on this subject, which was no doubt the reason that induced the legislature to pass the act of 1817, respecting voluntary surrenders, cannot but be felt in deciding this cause. The parties have asked our opinion on all the points submitted. I shall confine mine to what is necessary for the decision of the case before us, as I suppose regulations by legislative authority will supersede the necessity of this court going into the question at large, in order to settle the practice.
I shall consider—1. What kind of proof is *693 required by law, in order to establish the right to vote as creditor for the election of syndics.
2. If other creditors have a right to make opposition to it.
3. If that opposition, when formed on facts, should be tried by a jury.
4. If the persons, whose votes were objected to here, legally established their character as creditors.
I. The Spanish jurisprudence provided, that the administrator should be appointed by the whole of the creditors, or by the majority in amount. Febrero, 2, lib. 3, cap. 3, sec. 1, n. 26. If all agreed in the nomination, there was little difficulty as to the right to vote, and no occasion to establish it.
If, on the contrary, a difference of opinion existed, or the creditors had different interests, and the majority was to prevail, some mode must have been contemplated to ascertain that majority, and establish the amount of each claim; otherwise, no election, such as the law prescribed, could have taken place.
In what manner those persons who offered to vote, were to prove the sum due to them, the books which treat on this subject do not inform us. How then ought we to presume *694 that were to prove it? I know of no other mode but that which the law requires in every case where facts are contested in courts of justice;—by legal evidence.
Whenever the law declares that certain rights are the consequence of possessing a particular character, proof of that character must precede the exercise of the rights it confers, and if it is silent as to the manner in which this proof is to be made, the evidence must be the same as in other cases. This is the general rule, and I think we are bound to apply it to this case, unless the exception is shewn.
If we depart from this principle, what do we get in its place? Why, that any kind of proof will be sufficient, or none—that all that is required to vote, and for any amount, is the simple assertion of the person who presents himself as creditor. Positive law should be shewn to the court, to induce it to sanction a course of proceeding that would give to persons, who, perhaps had no interest in the estate, the election of syndics, and place in the power of those syndics property to an immense amount, which they might waste, or fraudulently convert to their own emolument.
*695 I think therefore the appointment must be made by those who are really creditors; that if that character is disputed, they must prove it, and that, in the same manner any other fact is established by legal evidence.
II. What has been already said on the necessity of the creditors to establish their right to interfere with the management of the insolvent's estate, decides the question as to the authority of the others to oppose it. If, as has been already shewn, it is necessary to have a majority in amount, to controul the rights of the minority, and appoint an agent for them, it would seem to follow, as a consequence, that if there is not that majority in amount, if it is apparent, and not real, the persons who are supposed to be in the minority should have the liberty of proving it; otherwise the syndics would not be appointed in the manner directed by law.
It has been urged, that this examination into the claim of each creditor, cannot take place until the appointment of an administrator or syndic has been made, and Febrero, 2, lib. 3, cap. 3, sec. 1, n. 26 & 29, has been cited in support of that position. It is very true, that after the appointment, the claims are subj *696 ect to be examined and contested. But I cannot see any thing in this doctrine at all opposed to the rights of bona fide creditors, to prevent such as are not so from voting tor syndics. I think, on the contrary, the author is speaking of the necessary requisites which precede the payment of the creditors after an administrator has been appointed, and the proceedings are approaching to a close.
The very passage quoted ( Febrero, loco citato) supports the right to oppose the nomination of syndics. It requires the judge to confirm the person appointed, if fit and proper, and there is neither fraud or collusion. If either appear he should refuse. Have not the parties interested then a right to shew that which it is the duty of the judge to decide on?
There is another material consideration. If this verification of the claims of each creditor can only be made after the administrator is appointed, it would be useless to give a right to make opposition. Before it could be exercised, the whole property of the insolvent might be wasted.
It is said that this double examination of the sums due each creditor, once to vote, and at other time to be paid, is vain and useless.— *697 But the answer of the appellants’ counsel to this argument is satisfactory; changes may have taken place in the mean time; endorsers may have taken up notes; conditional creditors may have become absolute ones; and creditors who did not appear, and were not represented at the first meeting, may come forward by themselves or agent, on the second.
No difficulty is presented by the objection, that the notary is not a judicial officer, and therefore, cannot take the evidence and decide on it. His duty is to record the proof each party presents, and return it to court where it can be acted on. Nor do I find any in the argument, that there is no person to carry on the suit. In cases of this kind, all the creditors are at once plaintiffs and defendants. Febrero, 3, cap. 3, sec. 1, n. 29.
It is true, as has been contended, that this course may produce delay and inconvenience; but on the other hand, all the property may be dissipated;-between these evils the choice is easy.
III. The right to make opposition being established, the question by whom it is to be examined, is of easy solution. The trial by jury, is a privilege of which no citizen of this *698 state can be deprived, except by his own consent, and consequently cannot be refused to the parties in this suit, if it should appear that facts were put at issue.
The appellees contend, that questions of fact were not at issue between the parties. To ascertain this, the pleadings must be resorted to. The opposition made by the appellants to the nomination before the notary, alleges various reasons why it should not be confirmed. Among others, that Tricou had not paid the endorsements for which he voted; and that the debt of Dutillet & Sagory was compensated, by a larger amount due the debtor Lanusse. The answer to this opposition denied generally, all the matters of fact alleged in it. This, I think, was sufficient to have the case enquired of by a jury.
IV. It is however, insisted, that even admitting the facts to be true, which are alleged in the opposition, that Tricou, as endorser, had a right to vote.
I do not think so. An endorser who has not paid his endorsee, cannot be permitted to vote at the deliberation of the creditors for syndics. Because, he would have no right as *699 such, to ask or receive payment on the final liquidation of the insolvent's estate. He is not a creditor; he may become one: whether he shall or not, depends on a future event, and until that event takes place, he cannot controul the proceedings of the other persons to whom the insolvent is really indebted. Pothier, Traité des obligations, n. 235.
The appellees further insist, that setting aside those votes, still they have the majority, as the judge illegally rejected the vote of madame Lanusse, through her attorney. But under the view I have taken of the law, that every creditor, whose right to vote is disputed, should be obliged to establish that right by legal proof, I agree with the judge a quo, that the oath of an agent, whose only knowledge is derivative, is not such evidence as the law requires.
As this case has been conducted below, evidently with a view to the act of 1817, on the subject of voluntary surrenders; I think that the cause ought to be remanded, with directions to the judge to send the parties before a notary to establish their respective claims, and appoint syndics according to law, and that the appellees pay the costs of this appeal.
Seghers for the plaintiffs, Derbigny for the defendants.